# Fox's Appeal.

A testator died seised of certain real estate, providing by his will, inter alia, as follows : "I do give and bequeath to my beloved wife, E., all my real and personal estate, she at no time to give or bequeath any portion of said estate out of my family, as at her decease I wish my estate which remains to go to my nephews and nieces which may be living at that time." Testator then bequeathed as a legacy to his wife's niece the interest of $1,000, which sum was to be invested on mortgage, and to be given to said niece on said wife's death. He also bequeathed his old family clock at his wife's decease to his eldest nephew or niece then living. *Held,* that the effect of the will was to vest in testator's wife a life estate in the realty, with remainder over to testator's nephews and nieces in fee.

[Fox's Appeal.]

January 18th 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Court of Common Pleas No. 3, of *Philadelphia county:* In Equity: Of January Term 1881, No. 186.

Appeal of H. J. Fox, executor and trustee under the will of Elizabeth Sparks, deceased, from a decree of said court, restraining him from collecting the rents of a certain house and lot, and requiring him to deliver up to the complainants the muniments of title thereto in his possession.

Bill in equity, filed by Joseph Shallcross, and others, the nephews and nieces of Samuel A. Sparks, deceased, against Henry J. Fox, executor and trustee under the will of Elizabeth Sparks, widow of said Samuel A. Sparks, and Edward Waln, trustee, setting forth as follows :—

Samuel A. Sparks died June 2nd 1861, seised of a certain house and lot on the east side of Second street in the city of Philadelphia, leaving the following will, dated September 26th 1860 :

" This, my only will and testament, I do give and bequeath to my beloved wife Elizabeth, all my real and personal estate, she at no time to give or bequeath any portion of said estate out of my family, as at her decease I wish my estate which remains to go to my nephews and nieces which may be living at that time.  I do give as a legacy to my wife's niece, Elizabeth S. Hoskins, the interest of $1,000, the said sum to be placed on first bond and mortgage well secured, the money to be given after my wife's decease.  The old family clock I give at my wife's decease to my eldest nephew or niece living.  I wish the clock to be kept in the family.

                                    " SAMUEL A. SPARKS.
     " September 26th 1860."

Elizabeth Sparks, testator's wife, survived him, and after enjoying the said premises for a number of years conveyed the same, by indenture dated December 3d 1877, to Edward Waln, in trust, to collect the rents, pay taxes, &c., and pay over the net income thereof to said Elizabeth, during her life, and at her death in trust for her appointees by will, and in default of appointment for her heirs.

Said Elizabeth Sparks died in April 1878, leaving a will, whereof she appointed said Henry J. Fox executor, with directions to sell and convey all her residuary estate, which included the premises in question.  At her decease the premises were in possession of certain tenants under her, or her said trustee Edward Waln.

The complainants averred that both the said Edward Waln and the said Henry J. Fox claim to hold the legal title to said premises, and refuse to surrender the title deeds. "That these conflicting claims cloud the title, and render it impossible for the complainants, who are advised that the fee simple of said premises is in them, as remainder-men under the will of said Samuel A. Sparks, to sell or lease the same, or to derive any beneficial ownership therefrom."

The complainants prayed a decree that they are entitled to the fee simple in said premises, and an injunction requiring the defendants to deliver up muniments of title in their possession, and restraining them from interfering with the complainants in the exercise of their rights as owners.

The separate answers of Edward Waln and Henry J. Fox admitted the material facts averred in the bill, but asserted that under the will of Samuel A. Sparks, his widow took a fee simple in said premises.

Mr. Waln in his answer set forth as follows:—"I do submit that the legal title to the premises, under the said deed of trust of December 3d 1877, is in me, asserting that by virtue of the will of the said Samuel A. Sparks a fee simple therein passed to the said Elizabeth Sparks. I respectfully submit that such is the legal effect and operation of said will. It was so held by Thompson, C. J., at nisi prius, in a suit for specific performance of a contract for the sale of said premises, in the Supreme Court of Pennsylvania, of January Term 1866, No. 4, wherein the said Elizabeth Sparks was plaintiff, and Robert S. Paschall defendant, wherein the following decree was entered:

"'October 4th 1865. This case came on before the Honorable James Thompson, and was argued by counsel on bill and answer. Whereupon it was considered, ordered, and decreed that the complainant, Elizabeth Sparks, does take a fee simple estate in the premises described in said bill and exhibits under the will of her deceased husband, and that the attempted restraint of alienation on said fee simple by the subsequent words in said will are void, and of no effect, and that said defendant is ordered and decreed to fulfill his contract of purchase set forth in said bill, and that he pay the costs in this case.'"

Owing to some reason, at present unknown, this decree was never enforced against the purchaser, but Mr. Waln averred that he was bound by the judicial construction thereby put upon the said will.

The said respondents respectively claimed title in themselves: Mr. Waln under the said deed of trust executed by Mrs. Sparks, and Mr. Fox under her will.

The case was heard upon bill and answers, and the court,

[Fox's Appeal.]

without filing an opinion, entered a decree in favor of the complainants in accordance with the prayers of the bill.

From this decree the defendant Henry J. Fox, executor and trustee, took this appeal, assigning the decree for error.

*William Hopple, Jr.*, for the appellant, and *R. M. Cadwalader*, on behalf of Edward Waln, trustee.—The decision of the late Chief Justice Thompson upon the question now before the court, though made at nisi prius, is entitled to great weight. His construction that Mrs. Sparks took a fee simple under this will is supported by the following cases : Hambright's Appeal, 2 Grant's Cases 321 ; Jauretche *v.* Proctor, 12 Wright 466 ; Church *v.* Disbrow, 2 P. F. Smith 219 ; Pennock's Estate, 8 Harris 268 ; Grove's Estate, 8 P. F. Smith 429 ; Rewalt *v.* Ulrich, 11 Harris 388 ; Biddle's Estate, 4 Casey 59. The gift of all the testator's estate, real and personal, created a fee simple before the Act of April 8th 1833. and, of course, since that Act there can be no doubt. And the legal incidents of a fee cannot be restrained by subsequent precatory words : Doughty *v.* Browne, 4 Yeates 179 ; Doebler's Appeal, 14 P. F. Smith 9 ; Kepple's Appeal, 3 Id. 211 ; Shirey *v.* Postlethwaite, 22 Id. 39 ; Quillman *v.* Custer, 7 Id. 125 ; Geyer *v.* Wentzel, 18 Id. 85 ; Cox *v.* Rogers, 27 Id. 160. If it was intended that the widow was to enjoy a life estate only, and dispose of the remainder by will, that of itself imports a fee : Girard Co. *v.* Chambers, 10 Wright 490 ; Norris *v.* Hensley, 27 Cal. 439 ; Gleason *v.* Fayerweather 4 Gray 348 ; 1 Redfied on Wills, 448. The testator's widow was the prime object of the testator's bounty, and she is not required to give security or account to the collateral heirs. A fee having been given, precatory words as to that " which remains " will not create a trust as to such surplus : Pennock's Estate, 8 Harris 268.

*John G. Johnson*, for the appellees.

[Sharswood, C. J. Is not this an ejectment bill ? A bill to remove a cloud on title can only be brought by one in possession.]

A pure question of law is raised by the bill and answer : all the parties in interest are before the court, and we ask the court to hear the case now as upon a case stated. We do not pray a decree as upon a bill to remove a cloud. The question will have to be decided by this court sooner or later.

[Sharswood, C. J. We do not wish to make any precedent which may seem to encourage what appears to be a growing tendency, especially in some parts of this state, to settle by bill in equity questions which properly should be tried in an ejectment. But we will consider the case.]

The only cases bearing upon the present question in Penn-

sylvania, are Hambright's Appeal, Jauretche *v.* Proctor, Church *v.* Disbrow, and Pennock's Estate, in each of which the words were precatory merely. There is nothing in any of them which either construes words like those in the present will, or compels us to put upon them any meaning other than that which is to be gathered from a common sense reading of them.

If the will read: " I do give and bequeath to my beloved wife Elizabeth all my real and personal estate, and at her decease I wish my estate which remains to go to my nephews and nieces which may be living at that time," there could be no doubt that it gave an estate for life to the widow, with remainder over to nephews and nieces. This construction is not rendered doubtful by the addition of the words, "she at no time to give or bequeath any portion of said estate out of my family." The subsequent clauses do but add force to this construction.

Chief Justice SHARSWOOD delivered the opinion of the court, January 30th 1882.

Every will is to be construed from its four corners to arrive at the true intention of the testator. Decisions upon other wills may assist, but cannot control the construction. The order in which devises are made in a will is rarely of much importance. The legacy to the testator's wife's niece of the interest of $1,000, "the said sum to be placed on first bond and mortgage well secured, the money to be given after my wife's decease," as well as the specific bequest of "the old family clock to my eldest nephew or niece living"—though subsequent in order to the devise of all his real and personal estate to his wife, were clearly gifts preceding it. The will ought to be read as if they were actually written before it. Then the gift to the wife is only that which remains, and that which remains he wishes to go to his nephews and nieces which may be living at the decease of his wife. The Act of April 8th 1833, Pamph. L. 249, provides that "all devises of real estate shall pass the whole estate of the testator in the premises devised, although there are no words of inheritance or perpetuity, unless it appear by a devise over or by words of limitation, or otherwise, in the will, that the testator intended to devise a less estate." It is true that the word "estate" in this will, would have carried the fee independent of this Act, but there is not the same clear indication of intention as where the fee is expressly given. Then it might be doubted whether the gift over of what remains was not merely of what was unconsumed or undisposed of. He has added a prohibition of any gift or bequest out of his family—which, if a fee had been expressly given, might have been considered a provision in restraint of the power of alienation, and therefore void.

But as it stands, it confirms the construction that the devise was but for life. She was not to give or bequeath any portion of the estate out of the family. His family consisted of his nephews and nieces, to whom the estate was limited over. The words are not precatory merely—expressing the wish that his wife should give or bequeath the estate, or what remains, to his nephews and nieces—but the words, "I wish," are as mandatory as the words "I will." The cases relied on by the learned counsel for the appellant were all decided upon the peculiar wording of the will, in each particular instance. Thus, in Hambright's Appeal, 2 Grant 320, a sum of money was left to the wife "for her full use during her lifetime," and "if any left" he desired it to go over. In Jauretche v. Proctor, 12 Wright 466, the husband named his wife as his "sole and only heir of all his property, real and personal," that she was not to divest herself of what he might leave, "until after her death," and at her death what he may have left her, that is to say, the residue, to be divided, &c. Here she had the power of testamentary disposition, and the residue could only mean, as the gift was of the whole, what was unconsumed. In Church v. Disbrow, 2 P. F. Smith 219, an express power of disposition was given during life, and a mere wish expressed that she would leave the property remaining at her death for a charitable use. In like manner, in Pennock's Estate, 8 Harris 268, the personal estate was all given absolutely with the expression of a confidence that the surplus should be divided, at the death of the life-tenant, among a class described. In Cox v. Rogers, 27 P. F. Smith 160, express power was given to the wife to use the whole of the personal property, to provide for the family, and, at her death, "what part of my personal property is then to be had," to be divided, &c. It is plain that no one of these cases resembles the will now before us. No doubt they were all rightly decided conformably to the intention of the testator in each particular will. In this will we find no such intention expressed or implied.

Decree affirmed, and appeal dismissed at the cost of the appellant.